IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OWANNA KAMBUI,                                )
a.k.a., OZZIE LEE HARDY, JR., #116991,[1]     )
                                              )
        Plaintiff,                            )
                                              )
v.                                            )        CASE NO. 2:10-CV-0002-WKW
                                              )                   [WO]
                                              )
LOUIS BOYD, et al.,                           )
                                              )
        Defendants.                           )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Ozzie Lee Hardy,

Jr. ["Hardy"], an indigent state inmate, challenging the adequacy of medical treatment provided

to him for pain and swelling in his groin area during stints of incarceration at Bullock

Correctional Facility ["Bullock"] and Easterling Correctional Facility ["Easterling"].[2] *Complaint*

*- Doc. No. 1* at 2-3.  Hardy names Louis Boyd and Carter Davenport, correctional officials

employed at Easterling during the relevant time period, and Dr. Darbouze and Dr. Siddiq, the

---

[1]For purposes of this Recommendation and in the interest of clarity, the court will refer to the plaintiff as Ozzie Lee Hardy ["Hardy"] since this is the name contained in the medical records submitted by the parties and utilized by the defendants in their affidavits.

[2]Although the Clerk of this court stamped the complaint "received" on January 4, 2010, it is clear that Hardy presented the complaint to prison officials for mailing prior to this date.  A review of the pleadings indicates Hardy executed the complaint on November 16, 2009. *Doc. No. 1* at 4.  The law is well settled that a *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Hardy] signed it...." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  Thus, the court considers November 16, 2009 as the date of filing.

attending physicians at Easterling and Bullock, respectively, as defendants in this cause of action.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Hardy's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment.  *Order of March 10, 2010 - Doc. No. 22*; *Order of March 17, 2010 (Doc. No. 24)*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to

> allow him to prevail on the merits, he cannot prevail at the summary judgment
> stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motions for

summary judgment, Hardy is required to produce "sufficient [favorable] evidence" which would

be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the

evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly

probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*,

477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573,

1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a

motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275,

1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's

"conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of

summary judgment appropriate where inmate produces nothing beyond "his own conclusory

allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th

Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose

summary judgment....").  Hence, when a plaintiff fails to set forth specific facts supported by

requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its

5

face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Hardy fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity

To the extent Hardy sues the defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has

waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Claims Barred by the Statute of Limitations

Hardy asserts that Dr. Siddiq failed to treat his epididymitis from December 6, 2005, his date of arrival at Bullock, until January 4, 2007.  In support of this assertion, Hardy contends he began to suffer pain and swelling in his right testicle during this period of time for which he first sought treatment on January 3, 2007.  *Plaintiff's Response to Defendant Siddiq's Report - Doc. No. 29* at 8; *Plaintiff's Affidavit in Response to Defendants' Reports - Doc. No. 32* at 3; *Plaintiff's Exhibit B in Support of Affidavit - Doc. No. 32-2* at 1.

Dr. Siddiq argues that any claims presented against him regarding treatment provided over two years prior to the filing of the complaint are barred by the applicable statute of

limitations.  *Defendant Siddiq's March 16, 2010 Special Report - Doc. No. 23* at 7-8.  In response to this defense, Hardy maintains that because he "was under the medical care of Dr. Siddiq from December 6, 2005 until February 5, 2008" his claims against Dr. Siddiq are "within the two year statute of limitations."  *Plaintiff's Affidavit in Response to Defendants' Reports - Doc. No. 32* at 4.

Upon review of the pleadings filed by the parties, it is clear that the claim presented by Hardy against Dr. Siddiq with respect to a lack of treatment from December 6, 2005 until January 4, 2007 is barred the two-year period of limitation.[4]

> All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the §1983 action has been brought.  *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985).  [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years.  Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).  Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  The statute of limitations begins to run when "'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Calhoun v. Alabama Alcoholic Beverage Control Board,* 705 F.2d 422, 425 (11th Cir.1983) (quoting *Reeb v. Economic*

---

[4]Hardy also asserts that the treatment provided by Dr. Siddiq from January 5, 2007 until his transfer from Bullock on February 8, 2008 failed to relieve his pain and discomfort.  Hardy asserts that during the aforementioned time period Dr. Siddiq "was deliberate indifferent to Plaintiff's continued complaints of a swollen and painful right testicle and request to be examined by a Urologist Specialist" because the conventional course of treatment undertaken by Dr. Siddiq was, in Hardy's opinion, ineffective.  *Plaintiff's Response to Defendant Siddiq's Report - Doc. No. 29* at 12.  With respect to those claims challenging the treatment actually provided by Dr. Siddiq, the court assumes *arguendo* that these claims allege an ongoing violation of the plaintiff's constitutional rights and, as such, are not barred by the two-year period of limitation.

*Opportunity Atlanta, Inc.,* 516 F .2d 924, 930 (5th Cir.1975)).   A section 1983 action therefore

accrues when the plaintiff knows or has reason to know of the underlying claim.  *Calhoun*, 705

F.2d at 424.

As previously noted, *infra* n.2, the earliest date the complaint could be deemed to have

been filed is November 16, 2009.  By it express terms, the tolling provision of *Ala. Code* § 6-2-

8(a) provides no basis for relief to Hardy from application of the time bar.[5]  Hardy knew or

clearly had reason to know he received no treatment from Dr. Siddiq for his scrotal issues from

December 6, 2005 until January 4, 2007, immediately from the time of his arrival at Bullock

until his first examination by Dr. Siddiq on January 5, 2007.  Moreover, Hardy repeatedly

concedes knowledge of the pain/swelling in his groin area throughout the period of time relevant

to the complaint.  Nevertheless, Hardy waited until November 16, 2009 to file this cause of

action challenging a denial of medical treatment by Dr. Siddiq from December 6, 2005 until

January 4, 2007, which is beyond two years from the time when this claim accrued.  Therefore,

the deliberate indifference claim lodged against Dr. Siddiq with respect to the lack of medical

treatment from December 6, 2005 until January 4, 2007 is barred by the two-year statute of

limitations and is due to be dismissed as frivolous.  *Clark v. Georgia Pardons and Parole Board*,

915 F.2d 636, 640 n.2 (11th Cir. 1990) ("The expiration of the statute of limitations is an

affirmative defense the existence of which warrants dismissal as frivolous.  *See Franklin*

[*v. State of Oregon*], 563 F.Supp. [1310] at 1330, 1332.").

---

[5]This section allows tolling of the limitation period for an individual who "is, at the time the right accrues ...
insane...."  *Ala. Code* § 6-2-8(a).  The pleadings filed herein demonstrate that Hardy was not legally insane at the time
of the challenged event so as to warrant tolling under *Ala. Code* § 6-2-8(a).

### C. Timely Deliberate Indifference Claims

1. <u>Defendants Boyd and Davenport.</u>  Hardy asserts that he submitted complaints to Boyd and Davenport challenging the adequacy of medical treatment provided to him at Easterling and these defendants merely advised him to seek redress from health care personnel.  *Attachment to Complaint - Doc. No. 1-1* at 7-8.  Hardy alleges that Boyd and Davenport acted with deliberate indifference because they did not intervene on his behalf requiring that he receive a different mode of medical care for his testicular pain/swelling than that prescribed by his attending physician at Easterling and refused to require that medical personnel refer him to a free-world urologist for evaluation of his condition.  *Id*.  These assertions entitle Hardy to no relief.

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).  Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.  *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)."  *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Hardy seeks relief from defendants Boyd and Davenport for the treatment provided by Dr. Darbouze, assuming these defendants exerted some authority over those persons responsible for the provision of medical treatment at Easterling, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their

subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for medical treatment provided to Hardy could attach to defendants Boyd and Davenport only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the

alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Hardy has presented no evidence sufficient to create a genuine issue of disputed fact with respect his claim of deliberate indifference by the correctional defendants. There is nothing before the court which indicates that Boyd and Davenport personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Hardy; rather, it is undisputed that they did not participate in the provision of treatment to Hardy. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Hardy and that they provided treatment to Hardy in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendants Boyd and Davenport can be liable for decisions of the medical staff only if their actions bear a causal relationship to the purported violation of Hardy's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Hardy must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Boyd and Davenport] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Hardy has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Boyd or Davenport directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action. In addition, Hardy has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which the correctional defendants failed to take corrective action; instead, the medical records indicate that Hardy had continuous access to medical personnel and received treatment for his condition throughout his incarceration at Easterling. Finally, the evidentiary materials submitted by the defendants demonstrate that the challenged medical treatment did not occur pursuant to a policy enacted by Boyd or Davenport. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Summary judgment is therefore due to be granted in favor of defendants Boyd and Davenport.

2. <u>Defendants Siddiq and Darbouze</u>. Hardy asserts that the medical defendants failed to properly diagnose the cause of his scrotal pain/swelling for approximately four years and during this period of time provided "inadequate and an easier less efficacious treatment when he was given only a scrotum support and minor medical treatment...." *Complaint - Doc. No. 1* at 3. Hardy makes the conclusory assertion that the testicular pain/swelling he suffered beginning in January of 2007 resulted from something other than epididymitis and alleges a varicocele or enlarged varicose vein in his right testicle constituted the actual cause of his condition. *Id*. Hardy further complains that the medical defendants refused to refer him to a free-world

13

urologist for evaluation even though he voiced persistent complaints of pain and swelling in his right testicle. *Id*.

The medical defendants adamantly deny they acted with deliberate indifference to Hardy's medical condition and, instead, maintain Hardy received appropriate treatment for his condition. The undisputed medical records indicate that defendants Siddiq and Darbouze provided treatment to Hardy for his testicular pain and that they based their treatment decisions on Hardy's medical history, examinations performed on Hardy, their evaluations of his condition and the results of various test procedures. These records likewise establish that upon his transfer to Bullock in December of 2005 and throughout the period of time relevant to the claims pending before this court Hardy suffered from chronic bouts of epididymitis which when active "swelling and/or inflammation of the epidimymis, which is the tube that connects the male testicle with the vas deferens. Epididymitis is usually caused by an infection which is spread from the urethra or the bladder.... Epididymitis is commonly treated through an antibiotic regimen as well as avoidance of at-risk behaviors such as unprotected sexual activity." *Medical Defendants' Exhibit 3 (Affidavit of Dr. Tahir Siddiq) - Doc. No. 8-5 at 6; Medical Defendants' Exhibit A (Part I of Medical Records) - Doc. No. 8-2 at 5.* The medical records further demonstrate that the medical defendants routinely examined Hardy regarding his complaints of testicular/groin pain, performed frequent evaluations of his condition, prescribed various types of medication to alleviate his discomfort, dispensed medical profiles, continuously monitored his condition, ordered adjustments to his prescribed medications and referred Hardy for an ultrasound of his scrotum in October of 2008. *Medical Defendants' Exhibit 4 (Affidavit of Dr.*

14

*Jean Darbouze) - Doc. No. 8-6* at 6; *Medical Defendants' Exhibit A (Part II of Medical Records) - Doc. No. 8-3* at 48.  The ultrasound ordered by defendant Darbouze and performed by a free world imaging facility on October 3, 2008 did not indicate the presence of a varicocele. *Defendants' Exhibit A (Part II of Medical Records) - Doc. No. 8-3* at 48.  Specifically, the ultrasound found "[v]ascularity of the testes is normal and symmetric.... There is no epididymal cyst but there is a small left hydrocele."[6]   *Id.*   Based on the results of the ultrasound, Dr. Darbouze continued the previous treatment regimen, including pain management via medication, issuance of a medical profile for a scrotal support and prescription of an antibiotic to thwart any possible bacterial infection.  *Medical Defendants' Exhibit 4 (Affidavit of Dr. Jean Darbouze) - Doc. No. 8-6* at 7.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge

---

[6]"A hyrdocele is a sac containing fluid which surrounds a testicle that causes swelling and may occasionally result in some discomfort.  Most hydroceles resolve without any type of medical treatment."  *Medical Defendants' Exhibit 4 (Affidavit of Dr. Jean Darbouze) - Doc. No. 8-6* at 7.

of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a

delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient
> to form the basis of a claim for deliberate indifference is well
> settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285,
> 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543
> (11th Cir.1995).   Instead, something more must be shown.
> Evidence must support a conclusion that a prison physician's
> harmful acts were intentional or reckless.  *See Farmer v. Brennan,*
> 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811
> (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996)
> (stating that deliberate indifference is equivalent of recklessly
> disregarding substantial risk of serious harm to inmate); *Adams,* 61
> F.3d at 1543 (stating that plaintiff must show more than mere
> negligence to assert an Eighth Amendment violation); *Hill v.
> Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28
> (11th Cir.1994) (recognizing that Supreme Court has defined
> "deliberate indifference" as requiring more than mere negligence
> and has adopted a "subjective recklessness" standard from criminal
> law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating
> "deliberate indifference" is synonym for intentional or reckless
> conduct, and that "reckless" conduct describes conduct so
> dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ...,

Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to

that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser

Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate

indifference, an inmate is required to establish "an objectively serious need, an objectively

insufficient response to that need, subjective awareness of facts signaling the need and an actual

inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d

16

at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to

the prisoner).   Thus, deliberate indifference occurs only when a defendant "knows of and

disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists and

he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164,

168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just

knowledge of symptoms, and ignore known risk to serious condition to warrant finding of

deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court has ... emphasized that not 'every claim by a
> prisoner that he has not received adequate medical treatment states a violation of
> the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888
> F.2d at 787.   Medical treatment violates the eighth amendment only when it is 'so
> grossly incompetent, inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).
> Mere incidents of negligence or malpractice do not rise to the level of
> constitutional violations.   *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical
> malpractice does not become a constitutional violation merely because the victim
> is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical
> malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871
> F.2d at 1033 (mere medical malpractice does not constitute deliberate
> indifference).   Nor does a simple difference in medical opinion between the
> prison's medical staff and the inmate as to the latter's diagnosis or course of
> treatment support a claim of cruel and unusual punishment.   *See Waldrop,* 871
> F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and

internal quotations omitted) (To show deliberate indifference to a serious medical need, a

plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment

18

to succeed." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9 (2002); *Mann*, 588 F.3d at 1307.

Initially, the court notes that Hardy presents no verifiable medical evidence which indicates he suffered from a varicocele prior to October of 2008; rather, the evidence before the court, including the ultrasound report from the October 3, 2008, demonstrates Hardy had "normal and symmetric" vascular activity in his testicles at that time.   *Medical Defendants' Exhibit A (Part II of Medical Records) - Doc. No. 8-3* at 48.  Thus, prior to October of 2008, the record is devoid of any evidence that a varicocele existed on which surgery could be performed. Based on his knowledge of Hardy's history for epididymitis, the patient's complaints of pain only in the right scrotum/testicle and the results of the ultrasound showing simply a small hydrocele on the left testicle, Dr. Darbouze did not deem referral to a urologist necessary and continued Hardy's prescription for Tylenol to alleviate any scrotal discomfort and issued a prescription for Bactrim to prevent a bacterial infection.   *Medical Defendants' Exhibit 4 (Affidavit of Dr. Jean Darbouze) - Doc. No. 8-6* at 7. In addition, upon repeated evaluations of Hardy's testicle/groin pain during his confinement at Bullock and Easterling, medical personnel initiated a treatment plan which included management of his condition through the use of prescription medication, issuance of medical profiles and routine examinations of the inmate. It is therefore clear that Hardy received medical treatment for his scrotal issues during the relevant time period, in the form of physical examinations, medical evaluations, prescription medication and performance of various tests.

Upon his arrival at Bullock in December of 2005, medical personnel performed a good you medical screening of Hardy.  The receiving nurse noted that Hardy suffered from several chronic medical conditions, including epididymitis.  *Medical Defendants' Exhibit A (Part I of Medical Records) - Doc. No. 8-2* at 5.  The nurse also noted that the only medications prescribed to Hardy at that time consisted of eye drops utilized in the treatment of his glaucoma.  *Id*.  Hardy did not request additional medication nor did he seek treatment for scrotal discomfort during the initial evaluation.  *Id*.  Dr. Siddiq therefore continued the prescriptions for Hardy's eye medication.  *Id*. at 25.  During his first several months at Bullock, Hardy submitted sick call requests regarding issues with gout, chronic leg pain, glaucoma and skin problems.  Medical personnel evaluated each of these complaints and ordered medications, profiles and tests in the treatment of Hardy's various conditions.  On January 3, 2007, Hardy submitted his first sick call request to Bullock personnel seeking treatment for pain and swelling in his right groin area.  *Plaintiff's Response to Siddiq's Report - Doc. No. 29* at 8; *Plaintiff's Affidavit in Response to Defendants' Reports - Doc. No. 32* at 3; *Plaintiff's Exhibit B in Support of Affidavit - Doc. No. 32-2* at 1.  The affidavit filed by Dr. Siddiq describes the treatment provided to Hardy for testicular pain/swelling during his confinement at Bullock.

> ... I conducted my first evaluation of Mr. Hardy related to his complaints of scrotal discomfort on January 5, 2007.  During my evaluation, I did not find or note any specific swelling in Mr. Hardy's scrotum.  Based upon my physical examination of Mr. Hardy and taking into consideration his medical history (which included bouts of epididymitis), I concluded that his complaints of discomfort in his scrotum were most likely the result of [a recurrence of] epididymitis and prescribed an antibiotic, Bactrim.  Mr. Hardy received the medication Bactrim from approximately January 5, 2007 through January 14, 2007.  In January of 2007, I also prescribed a scrotal support for Mr. Hardy for

20

a period of approximately ninety (90) days in hopes of alleviating any discomfort associated with the epididymitis.

I evaluated Mr. Hardy on seven (7) occasions during the remainder of 2007 and yet, he did not mention any complaints or problems with regard to his scrotum or testicles on these occasions.  As indicated in his medical records, I conducted evaluations of Mr. Hardy related to his chronic medical conditions, including [but not limited to] significant impaired vision as a result of severe glaucoma on January 29, 2007, March 26, 2007, September 17, 2007, October 1, 2007, October 19, 2007, November 9, 2007, and December 11, 2007, but [during these evaluations he] did not voice any complaints related to pain or discomfort in his scrotum.   Though Mr. Hardy's complaints regarding his chronic epididymitis ceased for most of 2007, I prescribed medication for his other medical conditions, attempted to continue to avoid the symptoms of his epididymitis through the use of antibiotics (Keflex and Amoxil), non-narcotic pain medication and continued use of the scrotal support, which he continued to utilize through most of 2007.  I even continued this preventative regimen in to January of 2008 by prescribing Bactrim (an antibiotic) and Ibuprofen for any discomfort.  Throughout my interactions with Mr. Hardy between January of 2007 and January of 2008, I understood that the treatment regimen prescribed by me had adequately controlled his chronic epididymitis.

Mr. Hardy left Bullock on February 5, 2008, when he was transferred to Easterling Correctional Facility.  Since Mr. Hardy's transfer from Bullock, I have not been responsible for, participated in or consulted with regard to his medical complaints, evaluations and/or treatment.

After Mr. Hardy's departure from Bullock ..., I understand from a review of his medical records that he continued to experience bouts of chronic epididymitis.  I also understand that Mr. Hardy underwent a procedure to correct a swollen vein connected to his right testicle in October of 2009; however, during his incarceration at Bullock, my examinations of Mr. Hardy did not reveal any signs or symptoms which would have provided me with any indication that he was experiencing a varicocele.  Moreover, the fact that Mr. Hardy underwent an ultrasound [in October of 2008] during his incarceration at Easterling (prior to his incarceration at Limestone where he underwent [the surgical] procedure) further indicates [the] absence of any varicocele as of the date of the first ultrasound [performed on October 3, 2008].  In short, I am not aware of any data or any objective findings indicating that Mr. Hardy ever experienced a varicocele during his incarceration at Bullock.

I have not at any time ignored any request by Mr. Hardy for medical treatment.  I have not deliberately ignored any medical complaints made by Mr. Hardy or interfered in any way with the provision of medical care to Mr. Hardy at any time....  At all times during his incarceration at Bullock, I listened to Mr.

> Hardy's complaints, undertook thorough physical examinations of him and provided medication when appropriate to control the symptoms which he communicated to me. In my professional judgment, ... Mr. Hardy received an appropriate level of medical care during his incarceration at Bullock which prevented the development of any further condition and which was designed to control his complaints of discomfort.

*Medical Defendants' Exhibit 3 (Affidavit of Dr. Tahir Siddiq) - Doc. No. 8-5* at 6-9 (citations to

medical records omitted).

During his tenure as the medical director at Easterling, Dr. Darbouze managed the

treatment provided to Hardy from his arrival at this facility in February of 2008 until his transfer

to the Limestone Correctional Facility in March of 2009. In his affidavit, Dr. Darbouze

addresses the claims before this court, in pertinent part, as follows:

> Mr. Hardy arrived at Easterling on February 5, 2008. Within a week after Mr. Hardy's arrival at Easterling, he voiced complaints to me of chronic scrotal discomfort, previously diagnosed as epididymitis. Upon review of his medical record, I diagnosed [Hardy as experiencing] another recurrence of his chronic epididymitis. [Hardy underwent a physical examination on February 11, 2008 and] [f]ollowing this appointment, I continued Mr. Hardy's prescription for a scrotal support and elected not to alter his existing antibiotic and pain medication regimen previously prescribed for him at Easterling Correctional Facility.
>
> Over the course of Mr. Hardy's first nine (9) months at Easterling, I continued to evaluate him on a regular basis and monitor and/or adjust his medication regimen for his chronic epididymitis. On February 12, 2008 and March 10, 2008, Mr. Hardy submitted sick call request forms complaining of continued scrotal discomfort. I examined Mr. Hardy on March 17, 2008, at which time he reported continuing pain to his right testicle that appeared as a continuing symptom of his chronic epididymitis based upon my examination. As indicated in my notes, the March 17, 2008, evaluation, resulted in a finding that Mr. Hardy's epididymitis was not acute at that time. In order to rule out any prostate-related or other possible conditions causing Mr. Hardy's discomfort, I ordered a PSA analysis and an x-ray on March 17, 2008, which were [both] negative [for any abnormalities].
>
> Two weeks later, Mr. Hardy attended a follow-up appointment with me, at which time I noted his statement that he had suffered from chronic epididymitis

for approximately fifteen years.  Following my physical examination of Mr. Hardy, I noted a slight increase in swelling in the right area of Mr. Hardy's scrotum, but there were no other signs or symptoms indicating any other diagnosis other than chronic epididymitis.  I evaluated Mr. [Hardy] again on April 22, 2008; however, there was no significant change in his condition or any additional symptoms of any kind.  During this time, Mr. Hardy remained on medication to control his symptoms.  When I examined Mr. Hardy again on June 13, 2008, and June 26, 2008, Mr. Hardy's condition remained stable and the symptoms controlled through medication.  Though Mr. Hardy submitted one sick call request form in July and another in August, 2008, his condition did not change and he continued to take Tylenol for any discomfort related to his condition.

When I evaluated Mr. Hardy on September 26, 2008, I noted that his condition remained unresolved and ordered him to undergo an "ultrasound of scrotum" related to his "chronic epididymitis."  An ultrasound study was conducted of Plaintiff's scrotum on October 3, 2008.  As indicated through the radiologist['s] report, the ultrasound did not find any significant abnormalities or other defects with regard to Plaintiff's scrotum except for a "small left hydrocele."  A hydrocele is a sac containing fluid which surrounds a testicle that causes swelling and may occasionally result in some discomfort.  Most hydroceles resolve without any type of medical treatment.  It should be noted that the ultrasound results did not reference any other medical condition or any other disfunction [sic] related to Mr. Hardy's scrotum.  Mr. Hardy has complained of pain at his right scrotum and right testicle.  No abnormalities were found on the right side of his scrotum on the ultrasound.

During the month of October, 2008, Mr. Hardy continued to receive [treatment] and I continued his prescription for Tylenol for any discomfort associated with his chronic epididymitis.  When I examined Mr. Hardy on October 30, 2008, I informed him of the findings of the [October 3, 2008] ultrasound and he did not [then] inform me of any pain or discomfort related to his scrotum or testicles.  Mr. Hardy did not [again] voice any complaints related to his scrotum or testicles until he submitted a sick call request form dated January 26, 2009, mentioning the recurrence of discomfort.  I examined Mr. Hardy two (2) days later, at which time it appeared to me that he was experiencing a recurrence of the hydrocele which required only monitoring at that time.  In order to help with the symptoms associated with this condition, I prescribed Tylenol and a scrotal support for Mr. Hardy.  After another follow-up appointment, I also prescribed the antibiotic Bactrim for Mr. Hardy to ensure that his condition was not the result of a recurring bacterial infection.

Following this series of examinations in January of 2009, Mr. Hardy did not voice any further complaints to me or submit any sick call request forms that I can identify raising any issues related to his scrotum or testicles during his [final

23

months of] incarceration at Easterling.  Mr. Hardy was transferred from Easterling Correctional Facility to Limestone Correctional Facility ... on March 11, 2009.

I have also reviewed certain documents related to the treatment received by Mr. Hardy following his incarceration at Easterling, which indicates that his complaints related to scrotal discomfort apparently persisted following a recent surgical procedure.   As indicated in the records from the medical staff at Limestone, Mr. Hardy complained of scrotal discomfort during an evaluation at the facility and the medical staff initially followed the same course of treatment provided during his incarceration at Easterling.  After several evaluations by the Limestone medical staff, Mr. Hardy underwent a second ultrasound on April 20, 2009, which resulted in a finding that "there is some mild varicocele formation along the inferior lateral aspect of the right scrotum."  Notably, a varicocele was not discovered during the October, 2008, ultrasound obtained by me.  Unlike a hydrocele, a varicocele is the dilation of the veins at the top of the scrotum resulting from incompetent venous values.  This condition can lead to infertility if left untreated.  If Mr. Hardy's prior ultrasound had indicated the presence of a varicocele, I would have referred him to a urologist for further evaluation.

Following this diagnosis, Mr. Hardy was referred to a urologist for further consultation.  Following an August 6, 2009, urology consultation, Mr. Hardy received a recommendation to undergo a surgical repair of the varicocele on his right testicle and a second recommendation after seeing the same urologist again. Mr. Hardy underwent a surgical repair of the varicocele on his right scrotum on October 5, 2009.  As indicated through the remaining medical records ..., Mr. Hardy continued to complain of scrotal discomfort after the October 5, 2009, procedure....  Therefore, Mr. Hardy underwent surgery in October of 2009 for a testicular condition, right varicocele, which did not exist during his incarceration at Easterling.  Indeed, if Mr. Hardy had experienced a varicocele, it would have appeared on the [October 3, 2008] ultra sound.

Throughout his incarceration, Mr. Hardy received various profiles.  A profile is simply a physician's order which permits an inmate ... to deviate from the standard protocols and procedures adopted by the ADOC.  Mr. Hardy's profiles related to various issues, permitting him to utilize a bottom bunk, to remain in his bed for periods beyond those usually permitted within the ADOC system and to utilize various medical devices including a scrotal support to alleviate his discomfort.

During Mr. Hardy's incarceration at Easterling, I did not at any time ignore any of his requests for medical treatment.  I did not deliberately ignore any of Mr. Hardy's medical complaints or interfere in any way with the provision of medical care to Mr. Hardy at any time....  In my professional medical judgment, I am not aware of any specific treatment which I could have provided which would have prevented his development of a varicocele following his incarceration

24

at Easterling.

*Medical Defendants' Exhibit 4 (Affidavit of Dr. Jean Darbouze) - Doc. No. 8-6* at 5-9 (citations to medical records omitted).

The synopsis of treatment provided to Hardy as detailed by the defendants in their affidavits is confirmed by the medical records filed in this case, *Defendants' Exhibit A to the Affidavit of Sophia Clemmons - Doc. No. 8-2 and Doc. No. 8-3*, and there is no evidence before the court which undermines the validity of these records; rather, Hardy adopts several of these records as his own exhibits and attaches them to his April 16, 2010 response.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the defendants in addressing Hardy's scrotal issues did not violate his constitutional rights.  The medical care Hardy received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented by Hardy simply fail to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical

25

treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Hardy received medical care for his complaints of testicular pain/swelling and likewise evident that the defendants rendered treatment to Hardy in accordance with their professional judgment.  Based on well settled law cited herein, Hardy's mere desire for different modes of medical treatment does not constitute deliberate indifference.  In addition, Hardy has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing the defendants acted with deliberate indifference to Hardy's medical condition.  Consequently, summary judgment is due to be granted in favor of defendants Siddiq and Darbouze.  *Carter*, 352 F.3d at 1350.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

26

ORDERED that **on or before February 12, 2013**, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of January, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

27